UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

JONA RECHNITZ,

*Defendant-Appellant.*

Docket No. 26-878

**AFFIRMATION IN OPPOSITION TO MOTION FOR BAIL PENDING APPEAL**

STATE OF NEW YORK )
COUNTY OF NEW YORK ) ss.:
SOUTHERN DISTRICT OF NEW YORK )

LARA POMERANTZ, pursuant to 28 U.S.C. § 1746, hereby affirms under penalty of perjury:

1. I am an Assistant United States Attorney in the Office of Jay Clayton, United States Attorney for the Southern District of New York. I represented the Government in the District Court, and I represent the Government in this appeal. I submit this affirmation in opposition to defendant-appellant Jona Rechnitz's motion for bail pending appeal. The District Court did not err—much less clearly err—in denying Rechnitz's motion for bail pending appeal of his sentence. Rechnitz has failed to present a substantial question of law or fact, let alone one that is likely to result in reversal. The motion should be denied.

## PRELIMINARY STATEMENT

2.      Rechnitz appeals from an amended judgment of conviction entered on March 23, 2026, in the United States District Court for the Southern District of New York, by the Honorable Katherine Polk Failla, United States District Judge.

3.      Information 16 Cr. 389 (RJS) (the "Information") was filed on June 6, 2016, in one count. The Information charged Rechnitz with conspiracy to commit honest services wire fraud, in violation of 18 U.S.C. § 1349.[1]

4.      On June 8, 2016, Rechnitz pleaded guilty, pursuant to a cooperation agreement with the Government, to the sole count in the Information.

5.      On December 19, 2019, the Honorable Alvin K. Hellerstein, United States District Judge, sentenced Rechnitz to five months' imprisonment, to be followed by three years' supervised release (the first five months of which would be served under house arrest), and imposed a mandatory $100 special assessment. In addition, Judge Hellerstein, who in proceedings against Rechnitz's co-conspirators had previously awarded the New York City Correction Officers Benevolent Association ("COBA") $19 million in restitution, held Rechnitz jointly and severally liable for $10 million of that amount. (Dkt. 84).

---

[1] "PSR" refers to the Presentence Report prepared by the Probation Office in connection with Rechnitz's sentencing; "Dkt." refers to an entry on the District Court's docket for this case; and "Mot." refers to Rechnitz's motion in this Court for bail pending appeal. Unless otherwise noted, quotations omit all internal quotation marks, citations, alterations, and footnotes.

6.     On February 27, 2020, COBA moved for an order requiring Rechnitz to pay additional restitution. (Dkt. 81, 82).

7.     On December 10, 2020, while COBA's motion was pending, Rechnitz filed a motion for reassignment to a different judge. (Dkt. 113). On December 17, 2020, Judge Hellerstein denied Rechnitz's motion for reassignment. (Dkt. 116).

8.     On November 9, 2021, Judge Hellerstein granted COBA's motion and increased Rechnitz's joint-and-several restitution obligation to $12.01 million, representing the full amount of COBA's remaining loss. (Dkt. 156). Rechnitz appealed. (Dkt. 157).

9.     On July 26, 2023, this Court held that recusal was required and remanded the case for reassignment to a different district judge and for plenary resentencing. *United States v. Rechnitz*, 75 F.4th 131, 135 (2d Cir. 2023).

10.    On August 13, 2024, Judge Failla (to whom the case had been reassigned) granted Rechnitz's request, joined by the Government and COBA, to bifurcate Rechnitz's sentencing and the briefing of restitution. (Dkt. 225). On October 16, 2024, Judge Failla ordered restitution to COBA in the amount of $891,000.00. (Dkt. 236 at 18).

11.    On March 20, 2026, Judge Failla sentenced Rechnitz to five months' imprisonment, to be followed by two years' supervised release, and imposed a mandatory $100 special assessment. (Dkt. 261).

3

12. On April 1, 2026, Rechnitz moved in the District Court for bail pending appeal (Dkt. 265), which Judge Failla denied the next day (Dkt. 266 at 5).

13. On May 4, 2026, Rechnitz filed the instant motion with this Court.

## STATEMENT OF FACTS

### A. The Offense Conduct

14. Rechnitz participated in a conspiracy with two principal objects, both of which involved bribery and honest services wire fraud: (i) a scheme to bribe high-ranking officials in the New York City Police Department ("NYPD"), and (ii) a scheme to bribe COBA's president, Norman Seabrook, to induce him to invest millions of dollars of COBA's money with a hedge fund, Platinum Partners ("Platinum"), founded and co-owned by Murray Huberfeld. (PSR ¶ 11).

15. In the NYPD bribery scheme, Rechnitz and Jeremy Reichberg, a self-styled New York City-based community liaison, bribed high-level NYPD officials in exchange for police action as opportunities arose from approximately 2008 to 2015. Rechnitz and Reichberg furnished the officials with an array of gifts, including travel, renovations to their residences, premium tickets to sporting events, expensive meals, and access to prostitutes. In return, the NYPD officials were "on call" to provide police-related official acts for the benefit of Reichberg, Rechnitz, and their clients or friends. (PSR ¶¶ 12-28).

4

16. In the COBA bribery scheme, Rechnitz facilitated a bribe paid by Huberfeld to Norman Seabrook, the president of COBA, the largest correctional officers' union in New York City. In return for the bribe, Seabrook invested $20 million of COBA funds with Platinum. When Platinum later declared bankruptcy amid government investigations into fraud and other wrongdoing at the fund, COBA lost $19 million of that investment. *See Rechnitz*, 75 F.4th at 134.

17. In exchange for COBA's investment in Platinum, Huberfeld, Seabrook, and Rechnitz agreed that Seabrook would get an annual kickback measured as a percentage of the profits from COBA's investment. (PSR ¶36). In late 2014, Huberfeld told Rechnitz that Seabrook's first kickback payment would be $60,000. (PSR ¶ 40). Rechnitz agreed to front the cash payment to Seabrook, and Huberfeld agreed that Platinum would reimburse him. (PSR ¶ 40). Rechnitz delivered the payment on December 11, 2014, handing Seabrook a newly purchased Ferragamo handbag containing $60,000 in cash. (PSR ¶ 41). Rechnitz submitted his reimbursement request to Platinum that same day. To conceal the nature of the transaction, Rechnitz submitted a phony invoice purporting to bill Platinum $60,000 for courtside tickets to New York Knicks games. (PSR ¶¶ 40-41). Platinum reimbursed Rechnitz three days later. (PSR ¶ 41).

5

**B.     The Charges, Guilty Plea, and Cooperation**

18.     Rechnitz began cooperating with the Government in May 2016. (Dkt. 255 at 1). On June 8, 2016, Rechnitz pleaded guilty, pursuant to a cooperation agreement, to Count One of the Information, which charged him with conspiracy to commit honest services wire fraud, in violation of 18 U.S.C. § 1349. (Dkt. 10).

19.     Rechnitz testified at three trials: (1) the 2017 trial of Seabrook and Huberfeld; (2) the 2018 retrial of Seabrook; and (3) the 2019 trial of Reichberg and James Grant, an NYPD official. (Dkt. 255 at 7). Rechnitz testified over the course of a combined 18 days and endured substantial cross-examination over the course of 13 of those days. (*Id.*).

**C.     Rechnitz's Original Sentencing**

20.     In advance of sentencing, the Probation Office prepared the Presentence Report, and determined that Rechnitz's United States Sentencing Guidelines range was 87 to 108 months' imprisonment. (PSR ¶ 143). The Government filed a motion requesting that Rechnitz be sentenced under the factors set forth in U.S.S.G. § 5K1.1 in light of the substantial assistance he had provided to the Government. (Dkt. 70).

21.     On December 19, 2019, Judge Hellerstein sentenced Rechnitz to five months' imprisonment, to be followed by three years' supervised release (the first five months of which would be served under house arrest), and imposed a mandatory

6

$100 special assessment.[2] Judge Hellerstein, who in the sentencings of Seabrook and Huberfeld had previously awarded COBA $19 million in restitution, held Rechnitz jointly and severally liable for $10 million of that amount. (Dkt. 84).

### D. The Post-Sentencing Restitution and Reassignment Litigation

22. On February 27, 2020—after sentence had been imposed, but before the March 3, 2020 entry of the judgment of conviction—COBA moved for an order requiring Rechnitz to pay additional restitution. (Dkt. 81, 82).

23. On March 26, 2020, Judge Hellerstein denied COBA's motion on the ground that he was "without jurisdiction" to grant the requested relief. (Dkt. 90). COBA then petitioned this Court for mandamus under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771, to correct the restitution order against Rechnitz, who opposed the petition. *See In re New York City Correction Officers' Benevolent Association*, No. 20-1400, Dkt. 1, 43. On July 30, 2020, this Court returned jurisdiction to Judge Hellerstein with a mandate to "reconsider its assessment of [Rechnitz's] culpability and financial condition in light of the new evidence presented by [COBA] and any other factors found relevant by the district court." (Dkt. 92 at 2).

---

[2] Judge Hellerstein originally indicated that he intended to sentence Rechnitz to ten months' imprisonment. (Dkt. 80 at 83). Rechnitz's then-defense counsel requested that Judge Hellerstein allow Rechnitz to serve five of the ten months on home confinement. (*Id.* at 85). The Government stated that it had no objection. (*Id.*).

24. On December 10, 2020, while COBA's motion was pending, Rechnitz filed a motion for reassignment to a different judge. (Dkt. 113). On December 17, 2020, Judge Hellerstein denied Rechnitz's motion for reassignment. (Dkt. 116).

25. On November 9, 2021, Judge Hellerstein granted COBA's motion and increased Rechnitz's joint-and-several restitution obligation to $12.01 million, representing the full amount of COBA's remaining loss. (Dkt. 156).

26. Rechnitz appealed from the November 9, 2021 restitution ruling and challenged Judge Hellerstein's denial of his motion for reassignment. (Dkt. 157).

27. On July 26, 2023, this Court held that recusal was required and remanded the case for reassignment to a different district judge and for plenary resentencing. *Rechnitz*, 75 F.4th at 135.

### E.    Rechnitz's Plenary Resentencing

28. On August 13, 2024, after the case was reassigned to her on remand, Judge Failla granted Rechnitz's request, joined by the Government and COBA, to bifurcate Rechnitz's sentencing and the briefing of restitution. (Dkt. 225). On October 16, 2024, Judge Failla found that the Government had not proven by a preponderance of the evidence that Rechnitz was the proximate cause of the approximately $11.7 million in remaining losses for which COBA sought restitution, or that the risk of loss from separate frauds was reasonably foreseeable to Rechnitz.

8

(Dkt. 236 at 11-12). Judge Failla ordered restitution to COBA in the amount of $891,000.00. (*Id.* at 18).

29.     On January 21, 2026, in advance of the resentencing, the Government filed a motion requesting that Rechnitz be sentenced under the factors set forth in U.S.S.G. § 5K1.1 in light of the substantial assistance he had provided to the Government. (Dkt. 255).

30.     On March, 20, 2026, Rechnitz appeared before Judge Failla for resentencing. (Dkt. 263). Judge Failla asked the Government to set forth its "position as to the completeness and significance" of Rechnitz's cooperation. (*Id.* at 13-14). The Government detailed Rechnitz's participation in serious crimes, as well as his extensive cooperation. (*Id.* at 14-19). Judge Failla remarked that "it has been six years since [the PSR] was prepared," and asked defense counsel to address Rechnitz's remaining debts and how Rechnitz was supporting himself. (*Id.* at 13). Defense counsel began his remarks by noting that he "want[ed] to talk primarily today about how Mr. Rechnitz's cooperation has affected him over the last 10 years." (*Id.* at 19). He described "how remarkable indeed his cooperation was" including, the fact that Rechnitz sat for 80 proffer sessions with the Government, testified at three trials, and was prepared to testify at a fourth trial. (*Id.* at 19-20). He remarked that the "last 10 years has taken a severe toll on" Rechnitz. (*Id.* at 22). Defense counsel explained that Rechnitz's "economic options" were "seriously affected" (*id.*

at 23), commented briefly on "the handful of judgments and settlements" against Rechnitz (*id.* at 26), and stated that Rechnitz "has worked hard to earn an honest living" and "worked hard to support his family" (*id.* at 28). Defense counsel then addressed "comparison cases and disparities." (*Id.* at 29-30). Rechnitz also spoke at the proceeding. (*Id.* at 32-36).

31. At the conclusion of Rechnitz's remarks, Judge Failla explained that she "do[es] not come out on the bench with a sentence already in mind" and she was "going to step off the bench . . . so that I can put together my thoughts." (*Id.* at 36-37). After the break, Judge Failla explained that she must consider the factors set forth in 18 U.S.C. § 3553(a), including "the nature and circumstances of the offense, the history and characteristics of Mr. Rechnitz, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide a just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes by Mr. Rechnitz," and the "need to avoid unwarranted sentence disparities among similarly situated defendants." (*Id.* at 37-38).

32. Judge Failla determined that, in light of intervening amendments to the United States Sentencing Guidelines since the PSR had been prepared, Rechnitz's Guidelines range was 70 to 87 months' imprisonment. (*Id.* at 38-39). She thanked the parties for their submissions, and expressed her view that she had "a complete

picture of what happened and what Mr. Rechnitz did in response to that." (*Id.* at 39). Judge Failla acknowledged that when Rechnitz's cooperation began, it was "full throated in the face of obstacles that . . . one doesn't normally see in this context." (*Id.*). She noted that "it appears that he has gotten himself on a better financial footing" and "better footing with his family and with his religion." (*Id.* at 39-40). Judge Failla acknowledged that "[a]s best I know, while he has been out on release, he has remained law abiding and that's over an extended period of time." (*Id.* at 40). Judge Failla stated, "I do want to note on the other side of the ledger, because I have to look at both, that the conduct is quite serious, and it extended over an enormous length of time. It is distressing to me that what it did was to promote corruption among public servants and basically the trading of favors. There was almost a banality to the conduct and it was as egregious as the government suggested." (*Id.*).

33. Judge Failla explained that she had been "wrestling with" her "acceptance of Mr. Rechnitz's cooperation." (*Id.*). She stated that she accepted that he had "done all that [he] can to atone for the criminal conduct in which [he] engaged," but she "remain[ed] concerned about the seriousness of the offense and the impact on the public and the sheer scope of the corruption." (*Id.* at 40-41). Judge Failla concluded that she had "considered very seriously the defense's request" for a non-custodial sentence, but could not give Rechnitz's requested sentence in light of "the nature of the conduct." (*Id.* at 41).

11

34. Judge Failla sentenced Rechnitz to a term of five months' imprisonment, followed by a term of two years of supervised release. (*Id.*). She did not impose the home confinement condition Judge Hellerstein had imposed, remarking that she did not think it was necessary. (*Id.*). Judge Failla asked both the Government and defense counsel if there was any reason she could not impose the announced sentence. Defense counsel stated that "there is no legal reason," but asked Judge Failla to allow Rechnitz to serve the five months' imprisonment on home confinement. (*Id.* at 42). Judge Failla denied the request. (*Id.*).

35. Defense counsel asked Judge Failla to consider splitting the five month sentence between imprisonment and home confinement, "consistent with the sentence that was imposed before" by Judge Hellerstein. (*Id.* at 43-44). Judge Failla remarked that she "thought about that" and "did not think the five months of home detention were necessary. I do think the five months' incarceration is. . . . I could have done exactly what Judge Hellerstein did, and I understand why he did it. In all candor, sir, I thought about something higher, but I did not think it was appropriate for me to go above the term of incarceration that he set." (*Id.* at 44).

36. Rechnitz is currently scheduled to surrender and begin serving his sentence on June 26, 2026.

**F.      Rechnitz's Motion for Bail Pending Appeal**

37.      On April 1, 2026, Rechnitz moved in the District Court for bail pending appeal. (Dkt. 265). Rechnitz argued that the District Court erred by "failing to adequately explain" Rechnitz's sentence (*id.* at 2), and failed to consider Rechnitz's updated circumstances (*id.* at 3-4). On April 2, 2026, the District Court denied Rechnitz's motion, stating that Rechnitz had "presented no basis for the Court to reconsider its prior decision, and the Court does not believe that the sentence is procedurally or substantively unreasonable." (Dkt. 266 at 5).

38.      On May 4, 2026, Rechnitz filed a motion for bail pending appeal in this Court.

## ARGUMENT

**RECHNITZ'S MOTION FOR BAIL PENDING APPEAL SHOULD BE
DENIED**

**I.      Applicable Law**

39.      A court "shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment" be detained pending appeal unless it finds, among other things, that the appeal "raises a substantial question of law or fact likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b).

40. This provision gives effect to Congress's view that "[o]nce a person has been convicted and sentenced to jail, there is absolutely no reason for the law to favor release pending appeal or even to permit it in the absence of exceptional circumstances." *United States v. Miller*, 753 F.2d 19, 22 (3d Cir. 1985). In short, there is a "presumption in favor of detention." *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004). It is the defendant's burden to "rebut this presumption with clear and convincing evidence." *Id.*

41. A "substantial question" is "a close question or one that very well could be decided the other way." *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985). With respect to all of these issues, "the burden of persuasion rests on the defendant." *Id.*

42. This Court gives great deference to a district court's bail decisions and will reverse only where there is "clear error"—that is, only if "on the entire evidence," the Court is "left with the definite and firm conviction that a mistake has been committed." *United States v. Mattis*, 963 F.3d 285, 291 (2d Cir. 2020).

## II. Rechnitz Has Not Met His Burden to Demonstrate a Substantial Question Likely to Result in Reversal

43. Rechnitz has not identified a substantial question regarding the procedural reasonableness of the sentence imposed, which this Court will review only for plain error due to Rechnitz's failure to raise the objection below. Rechnitz argues that Judge Failla procedurally erred by "failing to adequately explain its

14

imposition of a five-month sentence of imprisonment" (Mot. 10), claiming that Judge Failla's "only stated reason" for the sentence was the seriousness of the offense and that Judge Failla failed to address "the unwarranted sentencing disparities between Mr. Rechnitz and his co-defendants" (Mot. 11-12). Rechnitz also argues that Judge Failla erred by "reimposing effectively the same sentence originally imposed by Judge Hellerstein more than five years prior without considering changed circumstances." (Mot. 10-11). Rechnitz's arguments fail. Judge Failla, who more than adequately explained the sentence imposed, was not required to address the alleged sentencing disparities between Rechnitz and his co-defendants. The record also makes clear that Judge Failla, who did not reimpose "effectively the same sentence" imposed by Judge Hellerstein, considered developments in Rechnitz's life since Rechnitz's original sentencing.

44. This Court reviews the reasonableness of a district court's sentence "under a deferential abuse-of-discretion standard." *United States v. Watkins*, 667 F.3d 254, 260 (2d Cir. 2012). This Court's review of a sentence "encompasses two components: procedural review and substantive review." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). "Procedural error occurs in situations where, for instance, the district court miscalculates the Guidelines; treats them as mandatory; does not adequately explain the sentence imposed; does not properly consider the § 3553(a) factors; bases its sentence on clearly erroneous facts; or

deviates from the Guidelines without explanation." *United States v. McIntosh*, 753 F.3d 388, 394 (2d Cir. 2014). One of the Section 3553(a) factors is "the need for the sentence imposed to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). Another is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(6). As to explanation, the burden is not a great one: "[w]hile the district court must adequately explain the chosen sentence to allow for meaningful appellate review, that standard is met when the record as a whole satisfies [this Court] that the judge considered the parties' arguments and had a reasoned basis for exercising his own legal decisionmaking authority." *United States v. Ortiz*, 100 F.4th 112, 120 (2d Cir. 2024).

45.     Where a defendant fails to raise an alleged procedural error in the District Court, including a claim that the District Court has inadequately explained the basis for the sentence, this Court will review that forfeited objection only for plain error. *Id.* at 120 & n.3; Fed. R. Crim. P. 52(b). To meet that standard, a defendant must demonstrate that: "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Moore*, 975 F.3d 84, 90 (2d Cir. 2020). "[R]eversal for plain error should be used sparingly, solely in

those circumstances in which a miscarriage of justice would otherwise result." *United States v. Villafuerte*, 502 F.3d 204, 209 (2d Cir. 2007). "Meeting all four prongs [of the plain error standard] is difficult, as it should be." *Puckett v. United States*, 556 U.S. 129, 135 (2009).

46.     Here, Rechnitz's sentence was procedurally reasonable. Judge Failla correctly calculated the Guidelines; properly treated the Guidelines as discretionary; adequately explained the sentence imposed; properly considered the Section 3553(a) factors; did not base her sentence on any clearly erroneous facts; and did not deviate from the Guidelines without explanation. *See, e.g.*, *McIntosh*, 753 F.3d at 394. Rechnitz's arguments to the contrary fail to show any error, much less meet his burden to show plain error.

47.     First, Rechnitz cannot show that Judge Failla plainly erred by "failing to adequately explain" Rechnitz's sentence (Mot. 10). "A sentence is procedurally unreasonable if the district court fails adequately to explain the chosen sentence as § 3553(c) requires. But the 'statement' requirement of § 3553(c) sets a low threshold." *Ortiz*, 100 F.4th at 120. "The district court need not engage in a prolonged discussion of its reasoning, especially if the matter is conceptually simple." *Id.* "The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances." *Id.* "[D]etermining what is

17

required in any particular case is a matter firmly committed to the district court's discretion." *Id.*

48.     Here, the record as a whole establishes that Judge Failla considered the parties' arguments and had a reasoned basis for imposing the particular sentence. Rechnitz argues that Judge Failla's "only stated reason" for the sentence was the seriousness of the offense (Mot. 11), but that claim ignores the record. Judge Failla described the Section 3553(a) factors she was required to consider, discussed Rechnitz's extensive cooperation, and the seriousness of Rechnitz's offense. (*Id.* at 37-41). Judge Failla's focus on the nature of Rechnitz's cooperation and the seriousness of the offense does not suggest that other relevant Section 3553(a) factors were not considered. "A district court is presumed to have considered all relevant § 3553(a) factors and arguments unless the record suggests otherwise." *United States v. Halvon*, 26 F.4th 566, 570 (2d Cir. 2022). Nothing in the record rebuts this presumption. Instead, the record makes clear that Judge Failla considered the parties' submissions and arguments and reached a considered decision. *See* Dkt. 263 at 37 (Judge Failla explaining that she was "going to step off the bench . . . so that I can put together my thoughts"); *id.* at 39 (Judge Failla thanking the parties for their submissions and stating that she had a "complete picture of what happened"). Had Rechnitz objected or raised questions about Judge Failla's reasoning for the particular sentence, Judge Failla could have addressed those questions. But Rechnitz

did not. Rechnitz has failed to establish, as he must on plain-error review, that any error in failing to give adequate explanation for the sentence was clear or obvious under existing law, affected his substantial rights, and seriously undermined the fairness, integrity, or public reputation of judicial proceedings. *See Moore*, 975 F.3d at 90.

49.     Second, Rechnitz cannot show that Judge Failla plainly erred by failing to address "the unwarranted sentencing disparities between Mr. Rechnitz and his co-defendants" (Mot. 12). Under this Court's precedent, Judge Failla was not required to provide such an explanation. This Court has "repeatedly made clear that section 3553(a)(6) requires a district court to consider *nationwide* sentence disparities, but does not require a district court to consider disparities between co-defendants." *United States v. Bryant*, 976 F.3d 165, 180 (2d Cir. 2020). "Given that there is no requirement to consider a disparity with a co-defendant's sentence, there is certainly no procedural error in failing to explain it." *Id.*; *see United States v. Alcius*, 952 F.3d 83, 89 (2d Cir. 2020) ("[T]here is no requirement that a district court consider or explain sentencing disparities among codefendants."); *United States v. Rojas*, No. 23-6442, 2025 WL 1157071, at *1 (2d Cir. Apr. 21, 2025) (rejecting argument that defendant's sentence was procedurally unreasonable "because the district court failed to adequately explain why he received a lengthier sentence than his co-

conspirators despite his cooperation" as "a nonstarter" because "there is certainly no procedural error in failing to explain" a "disparity with a co-defendant's sentence").

50. In any event, it is clear from Judge Failla's statements that she considered Rechnitz's cooperation. *See, e.g.*, Dkt. 263 at 40 ("I accept, sir, that you have done all that you can to atone for the criminal conduct in which you engaged, because I believe that you have, and that is one very important factor that I must consider."). At bottom, Rechnitz's argument amounts to a disagreement with how Judge Failla weighed his cooperation. Such disagreement goes to the merits of the sentence, not the sufficiency of the explanation, and cannot constitute procedural unreasonableness, especially on plain error review. *See, e.g.*, *United States v. Morillo*, 540 F. App'x 63, 65 (2d Cir. 2013) ("That [the sentencing judge] chose not to give greater weight to the cooperation and the 5K1.1 letter does not rise to the level of an error or an 'abuse of discretion,' or make the sentence procedurally unreasonable."); *United States v. Johnson*, 567 F.3d 40, 52 (2d Cir. 2009) ("[A] district court alone may determine what effect to give to a 5K1.1 letter.").

51. Third, Rechnitz cannot show that Judge Failla plainly erred by failing to consider the "intervening developments" in Rechnitz's life since his original sentencing in 2019. (Mot. 13-16). In support of his argument, Rechnitz cites *United States v. Hernandez*, 604 F.3d 48 (2d Cir. 2010), but that case is readily distinguishable. In *Hernandez*, this Court vacated the district court's reimposition of

an identical 405-month term of imprisonment on remand because the record indicated that the court failed to consider the § 3553(a) factors—specifically, "evidence of rehabilitation and other mitigating evidence." 604 F.3d at 55. This Court held that the district court had misconstrued its mandate in declining to conduct a *de novo* resentencing. *See id.* at 54 (noting that in 15-year interval between remand and resentencing, "law of sentencing [had] substantially evolved, and [defendant] may have undergone a remarkable rehabilitation"). This Court "vacated the sentence, notwithstanding the district court's statement that it had considered the statutory factors, because it was apparent from the record that the district court incorrectly understood the scope of its resentencing authority to be limited." *United States v. Rojas*, 412 F. App'x 363, 366 (2d Cir. 2011).

52.     Here, by contrast, the record makes plain that Judge Failla conducted a plenary resentencing during which, contrary to Rechnitz's assertions, she considered the § 3553(a) factors and developments in Rechnitz's life. *See, e.g.*, Dkt. 263 at 13 (remarking that "it has been six years since [the PSR] was prepared," and asking defense counsel to address Rechnitz's remaining debts and how Rechnitz was supporting himself); *id.* at 39-40 (noting that "it appears that he has gotten himself on a better financial footing" and "better footing with his family and with his religion."); *id.* at 40 ("As best I know, while he has been out on release, he has remained law abiding and that's over an extended period of time."). After listening

21

to defense counsel's arguments about, among other things, the developments in Rechnitz's life, Judge Failla took a break to "put together [her] thoughts." (*Id.* at 37). Ultimately, Rechnitz's argument amounts to a disagreement with how Judge Failla weighed those developments. Such disagreement cannot constitute procedural unreasonableness, especially on plain error review. *See United States v. Myrick*, 701 F. App'x 69, 70 (2d Cir. 2017) (where district court "paid attention to the arguments" and did not "misapprehend[] the record," it was not necessary that it "address every argument . . . or discuss every § 3553(a) factor individually").

53. Moreover, contrary to Rechnitz's contention, Judge Failla did not impose "effectively the same sentence" as Judge Hellerstein. (Mot. 1). Judge Hellerstein originally indicated his intention to sentence Rechnitz to ten months' imprisonment and then agreed to allow Rechnitz to serve five of the ten months on home confinement, thereby reducing his custodial sentence to five months. (Dkt. 80 at 83-85). Judge Failla, on the other hand, sentenced Rechnitz to five months' imprisonment and did not impose any additional term of home confinement. (Dkt. 263 at 41). When defense counsel asked Judge Failla to "consider splitting the sentence between imprisonment and home confinement", Judge Failla responded, "I have thought about that, and I did not think the five months of home detention were necessary. I do think the five months' incarceration is. That's why I have done it that way. I could have done exactly what Judge Hellerstein did, and I understand why he

22

did it." (*Id.* at 43-44). Judge Failla's sentence reflects her considered judgment of what she deemed a "fair and just sentence under all the circumstances." *United States v. Jones*, 460 F.3d 191, 195 (2d Cir. 2006).

54.     Rechnitz has also failed to establish, as he must on plain-error review, that any error in failing to consider developments in Rechnitz's life was clear or obvious under existing law, affected his substantial rights, and seriously undermined the fairness, integrity, or public reputation of judicial proceedings. *See Moore*, 975 F.3d at 90.

## CONCLUSION

55.     For the foregoing reasons, Rechnitz's motion for bail pending appeal should be denied.

Dated:     May 14, 2026
           New York, New York

                              Respectfully submitted,

                              JAY CLAYTON
                              United States Attorney


                    By:     /s/Lara Pomerantz
                            Lara Pomerantz
                            Assistant United States Attorney
                            Tel: (212) 637-2343

23

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27(d)(2)(A), the undersigned counsel hereby certifies that this opposition complies with the type-volume limitation of the Federal Rules of Appellate Procedure. As measured by the word processing system used to prepare this opposition, there are 5,166 words in this opposition.

JAY CLAYTON,
*United States Attorney for the*
*Southern District of New York*

By:     LARA POMERANTZ
*Assistant United States Attorney*